Filed 9/24/21  P. v. Laberge CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CIRESE FAYE LABERGE,<br><br>    Defendant and Appellant. | D078234<br><br><br><br>(Super. Ct. No.  SCN015705) |

APPEAL from an order of the Superior Court of San Diego County, Harry M. Elias, Judge.  Reversed and remanded with directions.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Lynne G. McGinnis, and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

In 1995, following a second jury trial, Cirese Faye Laberge was convicted of second degree murder (Pen. Code,[1] § 187, subd. (a)) while armed with a firearm (§ 12022, subd. (a)(1)) and conspiracy to commit murder (§ 182 subd. (a)) while armed. The court sentenced Laberge to an indeterminate term of 16 years to life in prison.

Laberge appealed, and this court affirmed the second degree murder count but reversed the conspiracy count. The court held there was no possible crime of conspiracy to commit unintentional murder and reversed the conspiracy count in an unpublished opinion. (*People v. Laberge* (Aug. 13, 1998, D025887) [nonpub. opn.].)[2]

In 2019, Laberge filed a pro. per. petition for resentencing under section 1170.95. She claimed she had been convicted on a theory of felony murder or natural and probable consequences and could not now be convicted under current law. The court appointed counsel and received briefing. After a review of the record the court denied the petition by a written order stating:

> "The Court has reviewed all of the CALJIC instructions in SCN15705, People v. Cirese LaBerge.

> "There were no instructions given on either the Felony Murder Rule or natural and probable consequences. The only mention of 'natural consequences' was in CALJIC 8.11 in the definition of implied malice.

> "In CALJIC 3.01 the jury was instructed that they must find the defendant aided and abetted with the knowledge of the unlawful purpose of the perpetrator, the murder of Kristi Anderson by Erin O'Conner and with the intent or purpose of committing, encouraging, or facilitating the commission of that crime.

---

[1] All further statutory references are to the Penal Code.

[2] We have taken judicial notice of our records in *People v. Laberge, supra,* D025887.

2

"Based on the above, the Petition is hereby Denied.
Hearing date of November 9, 2020 is vacated."

Laberge filed a timely notice of appeal.

## STATEMENT OF FACTS

The facts of the offense are exhaustively set forth in our prior opinion. We will not repeat them here given the issues presented in this appeal. We will incorporate the respondent's summary of the facts for convenience and background.

In 1994, Laberge dated Erin O'Connor, who had a fifteen-month-old daughter from a previous relationship with Kristi Anderson. Anderson and O'Connor shared custody of their daughter, and Laberge was jealous of Anderson. Laberge and O'Connor told friends that they planned to marry and move to Wyoming where they would raise O'Connor's daughter. Laberge and O'Connor joked about killing Anderson.

Around 6:00 p.m. on December 7, 1994, Anderson was shot and killed while near her parked car outside her home. Her daughter remained unhurt in the car's child seat.

A witness remembered seeing a white car parked near Anderson's home shortly before the shooting and said there were two people sitting inside it who leaned back as if to avoid being seen. Laberge drove a white car, a Dodge Shadow, and Laberge routinely drove O'Connor to and from work or on errands because O'Connor did not have a car.

O'Connor gave the police an alibi for the shooting by saying that he had been with Laberge at a restaurant where they were regular customers. A waitress remembered them—they typically stayed at the restaurant several hours while talking with friends—but this time they left around 7:15 p.m., which was soon after they arrived and had only ordered coffee.

3

Although O'Connor initially mentioned visiting only the restaurant, Laberge and O'Connor later told the police that they had gone to Mount Soledad. But the police twice tried to drive the route during the purported time of their trip, even while exceeding the speed limit, and had failed both times. Laberge and O'Connor later agreed to accompany officers while separately showing them their purported route on the Coast Highway. When faced with a detour that neither had mentioned, Laberge told an officer to follow the detour back to the interstate while O'Connor told an officer to ignore the detour, which required a later U-turn.

After interviewing O'Connor, the police recovered the handgun used to kill Anderson from Batiquitos Lagoon, and they determined that the gun had been stolen from an office where O'Connor had worked in August 1994. The owner of a sporting-goods store remembered the gun because it was unusual, and she sold an ammunition clip for it to two people during the fall of 1994.

## DISCUSSION

Laberge appeals contending the trial court engaged in impermissible fact-finding at the prima facie evaluation of her petition. She argues we should reverse the denial of her petition and remand the case for the issuance of an order to show cause (OSC) and an evidentiary hearing. After our review of the record, we agree the trial court erred in finding Laberge ineligible for relief under section 1170.95.

First, the trial court was mistaken when it found the jury was not instructed on the natural and probable consequences theory of liability. The jury was given former CALJIC No. 6.11, which provided in part: "A member of a conspiracy is not only guilty of the particular crime that to her knowledge her confederates agreed to and did commit, but is also liable for the natural and probable consequences of any act of a co-conspirator to further the object

4

of the conspiracy, even though such act was not intended as part of the agreed upon objective and even though she was not present at the time of the commission of the act."

Further, the prosecutor argued Laberge was responsible for the codefendant's act of shooting the victim. The argument was in support of the conspiracy charge for which former CALJIC No. 6.11 was given.

Laberge was the driver of the car from which the passenger fired the shots that killed the victim. Laberge's culpability depends on her knowledge of the codefendant's purpose and possession of a gun. She denied such knowledge, although the jury may have disbelieved her. The fact there is sufficient evidence from which a jury could find Laberge a direct aider and abettor, the record does not establish such fact as a matter of law.

In order to find Laberge acted with implied malice or was a major participant in the offense, who acted with reckless indifference to life, it is necessary to find the facts, make credibility decisions and weigh the evidence. Such evidentiary analysis is not appropriate at the prima facie evaluation stage of a petition for resentencing.

## A. Legal Principles

Senate Bill No. 1437 (Stats. 2018, ch. 1015) was enacted to prevent convictions for murder for those persons whose liability would be based on aiding and abetting a felony murder or based on the theory of natural and probable consequences of aiding another, unless the person acted with intent to kill or was a major participant who acted with reckless indifference to life. The legislature created section 1170.95 to provide an opportunity to persons convicted in the past on theories that are no longer permissible under the statute, to seek resentencing of their convictions consistent with current theories of liability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842.)

5

Section 1170.95, subdivision (c) provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

At the initial stage of reviewing a petition, the trial court may deny the petition if it finds, as a matter of law that the petitioner in not eligible under the statute. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329, review granted Mar. 18, 2020, S260493; *People v. Lewis* (2021) 11 Cal.5th 952, 961-963.)

Review of the record of conviction at the prima facie stage is limited to access to readily available facts such as the nature of the conviction or true finding on an allegation. The court is not authorized to engage in factfinding at the preliminary stage of the statutory procedure. (*People v. Drayton* (2020) 47 Cal.App.5th 965, 982.)

## B. Analysis

Here, the trial judge relied in part on his memory of the evidence presented at trial. The court was mistaken about the instructions given to the jury in former CALJIC No. 6.11. Laberge was the driver of the car. She could have been a direct aider and abettor who acted with knowledge of the codefendant's intent to kill and may have shared that intent. Alternatively, Laberge may have aided and abetted her boyfriend's plan to harm the victim, the natural and probable consequence of which would have been murder.

6

Which scenario applies to this case will require evidence and the finding of the operative facts.  Such discovery will have to come through the issuance of an OSC and a properly conducted evidentiary hearing.  We express no opinion as to the appropriate outcome of such fact-finding process.

DISPOSITION

The order denying Laberge's petition for resentencing under section 1170.95 is reversed.  The case is remanded with directions to issue an OSC and to conduct an appropriate evidentiary hearing as required by statute.

HUFFMAN, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.